Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID C.,<br><br>      **Plaintiff,**<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      **Defendant.** | Civil Action No.: 20-5305 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

  Plaintiff David C. appeals the decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.* (*See* D.E. No. 1). For the reasons discussed below, the Court **VACATES** and **REMANDS** the decision of the Commissioner.

**I.  BACKGROUND**

  On November 6, 2018, Plaintiff filed an application for DIB. (D.E. No. 8, Administrative Record ("R.") 279–80). He claimed disability as a result of several impairments, including peripheral artery disease ("PAD"), chronic obstructive pulmonary disorder ("COPD"), hepatitis C, arthritis, and post-traumatic stress disorder ("PTSD"). (*Id.* at 331). Plaintiff's application was denied initially and on reconsideration. (*Id.* at 180 & 192). On November 4, 2019, an Administrative Law Judge ("ALJ") held a hearing, at which Plaintiff and a vocational expert testified. (*Id.* at 122–62).

  On November 25, 2019, the ALJ denied Plaintiff's application for DIB. (*Id.* at 104–21). The ALJ ruled that Plaintiff's impairments did not meet or medically equal a listed impairment that would automatically render him disabled, and that Plaintiff has the residual functional capacity

("RFC") to perform work for which there exists a significant number of jobs in the national economy. (*Id.* at 111–16). More specifically, the ALJ determined that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple work with only occasional interaction with supervisors and coworkers and never with the public.

(*Id.* at 113). Relying on the vocational expert's testimony, the ALJ found that an individual with the above RFC could perform work as a laundry worker (67,000 jobs in the national economy); a night cleaner (300,000 jobs); and a hand packager (25,000 jobs). (*Id.* at 116). On February 28, 2020, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1–7). Plaintiff then filed the instant appeal, which the Court has subject-matter jurisdiction to decide under 42 U.S.C. §§ 405(g) & 1383(c)(3). The Commissioner opposes. (D.E. No. 18).

## II.   LEGAL STANDARD

### A.   Standard Governing Benefits

To receive DIB, a claimant must show that he is "disabled" within the meaning of the Act. 42 U.S.C. § 1382(a). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 1382c(a)(3)(A). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." § 1382c(a)(3)(B).

"The Commissioner uses a five-step process when making disability determinations . . . ." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920). "The claimant bears the burden of proof for steps one, two, and four," and

"[t]he Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof." *Id.* at 263 n.2. If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 404.1520(a)(4).

*Step One*. First, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. § 404.1520(a)(4)(i). If an individual engages in substantial gainful activity, he is not disabled under the Act, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. § 404.1520(b).

*Step Two*. Second, the claimant must show that his medically determinable impairments or a combination of impairments were "severe" as of the date last insured ("DLI"). 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

*Step Three*. Third, the claimant may show, based on medical evidence, that as of the DLI, his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant makes such a showing, he is presumptively disabled and entitled to benefits. If he does not make the showing, he proceeds to step four.

*Step Four*. Fourth, the claimant must show that, as of the DLI, he lacked the RFC to

3

perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If as of the DLI the claimant lacked the RFC to perform his past relevant work, the analysis proceeds. *See, e.g.*, *Plummer*, 186 F.3d at 429.

***Step Five***. Finally, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner finds that the claimant is able to perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits. *See id.*

### B. Standard of Review

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). But the "findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). As a term of art used throughout administrative law, the term "substantial evidence" may vary depending on the context. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In this context, "the threshold for such evidentiary sufficiency is not high." *Id.* Importantly, the substantial evidence standard does not give rise to categorical rules but rather depends on a "case-by-case" inquiry. *Id.* at 1157. "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *accord Biestek*, 139 S. Ct. at 1154. And although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Substantial evidence may exist, and the Court must affirm, "even if [the Court] would have

decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

**III.   THE ALJ's DECISION**

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the onset date of his impairments—that being April 7, 2010. (R. at 109–10).

At step two, the ALJ found that Plaintiff had medically determinable impairments or a combination of impairments that were "severe" as of the DLI. (*Id.* at 110–11). In particular, the ALJ found that Plaintiff's alcohol use disorder and PTSD were severe. (*Id.* at 110). The ALJ also found that several of Plaintiff's impairments were not severe—those being hepatitis C, COPD, PAD, a right upper lung mass, right lower extremity stent placement, and other impairments related to arthritis, ischemia/systolic heart failure, and visual acuity. (*Id.* at 110–11). Relevant to this appeal, the ALJ found that Plaintiff's COPD and PAD were not severe because he did not suffer "significant symptoms when he was not smoking and took his medication," and because he was otherwise in good physical health—as shown by his functional activities, which included being able to walk "miles" and run on a treadmill "frequently," and going to the gym two to three times per week for an hour where he used a punching bag, did sit-ups, and lifted weights. (*Id.*).

At step three, the ALJ found that Plaintiff's "mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listing 12.15." (*Id.* at 111). The ALJ considered both the paragraph B and paragraph C criteria for listing 12.15. (*Id.* at 111–12). As for the paragraph B criteria, the ALJ found that Plaintiff has only moderate limitations in (i)

5

understanding, remembering, or applying information; (ii) interacting with others; (iii) concentrating, persisting, or maintaining pace; and (iv) adapting or managing himself. (*Id.*). With respect to paragraph C, the ALJ found there was no evidence that Plaintiff has a serious and persistent mental disorder of two or more years with evidence of both (i) mental health treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of a mental disorder; and (ii) a minimal capacity to adapt to changes to his environment or to demands that are not already part of his daily life. (*Id.* at 111).

At step four, the ALJ found that Plaintiff has an RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple work with only occasional interaction with supervisors and coworkers and never with the public.

(*Id.* at 113). Relevant to this appeal are three determinations that the ALJ made concerning the above RFC. First, the ALJ did not explicitly consider Plaintiff's exertional abilities. (*Id.* at 113–15). Instead, the ALJ focused only on Plaintiff's non-exertional limitations stemming from his alcohol use disorder and PTSD. (*Id.*).

Second, in fashioning the RFC, the ALJ considered the opinion of Plaintiff's treating physician, Dr. George Cuesta, a neuropsychologist, as reflected in a mental residual functional capacity questionnaire. (*Id.* at 115). The ALJ found Dr. Cuesta's opinion persuasive "but only as it relates to the moderate mental functioning limitations"—those being in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (*Id.*). However, the ALJ did not explicitly include those limitations in Plaintiff's RFC. (*Id.* at 113).

Third, the ALJ "did not find support for unscheduled breaks or multiple absences. In fact, the claimant testified to significant anger issues, which may cause needed breaks or absences, but this was not documented in his treatment notes." (*Id.* at 115). More generally, the ALJ found that

Plaintiff's longitudinal treatment records did not support the intensity or persistence of his subjective allegations:

> As discussed in the foregoing, the medical evidence reflects that the claimant's treatment during the period of adjudication has been extremely limited and conservative. Moreover, the claimant stopped mental health treatment years ago and only resumed it in May 2017 with sertraline and five visits with a psychologist, which did not reveal any significant abnormalities that would prevent him from working. In fact, he works part-time as an Uber driver.

(*Id.*).

Finally, at step five, the ALJ found, relying on vocational expert testimony, that at Plaintiff's RFC, he could perform jobs that exist in significant numbers in the national economy—in particular, as a laundry worker (67,000 jobs); a night cleaner (300,000 jobs); and a hand packager (25,000 jobs). (*Id.* at 116).

## IV.   DISCUSSION

Plaintiff assigns several errors to the ALJ's decision. (D.E. No. 17 ("Mov. Br.")). Each assigned error relates to step four, at which the ALJ found that he had no exertional limitations and that his non-exertional limitations were for "simple work with only occasional interaction with supervisors and coworkers and never with the public." (R. at 113). The Commissioner opposes each of Plaintiff's arguments. (Opp. Br. at 1).

### A.   Exertional Limitations

Plaintiff argues that the ALJ erred at step four by failing to consider all of his impairments. (Mov. Br. at 12). In particular, the ALJ failed to consider his PAD and lung cancer—two impairments that the ALJ deemed not severe at step two of the analysis. (*Id.*). Plaintiff argues that "[t]he ALJ must consider limitations from all medically determinable impairments, even if not 'severe.'" (*Id.* (citing 20 C.F.R. § 404.1545; *Salles v. Comm'r of Social Sec.*, 229 F. App'x

140, 147 (3d Cir. 2007); *Fargnoli v. Massanari*, 247 F.3d 34, 41–42 (3d Cir. 2001)). The Commissioner appears not to dispute that an ALJ must consider even non-severe impairments at step four. (Opp. Br. at 9–13). Nor does the Commissioner appear to dispute that the ALJ here failed to do so. (*Id.*). Instead, the Commissioner appears to suggest that the error is harmless because "a non-severe impairment, by definition, does not significantly limit an individual's ability to perform basic work activities." (*Id.* at 12 (citing 20 C.F.R. § 404.1522(a)). For that reason, the Commissioner argues, "the ALJ was not required to include any physical limitations in the RFC assessment." (*Id.*). The Court agrees with Plaintiff.

Steps two and four present different inquiries. At step two, the ALJ determines whether the claimant has a severe impairment. "The step-two inquiry," unlike that at step four, "is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Meanwhile, at step four, the ALJ determines the claimant's RFC, which is what "an individual is still able to do despite the limitations caused by his or her impairment[s]." *Fargnoli*, 247 F.3d at 40 (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)). At step four, "[a]lthough the impairment must be medically determinable, it need not be a 'severe' impairment to be considered in the RFC assessment." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). "[T]he Commissioner's procedures do not permit the ALJ to simpl[y] rely on h[er] finding of non-severity as a substitute for a proper RFC analysis." *Kich v. Colvin*, 218 F. Supp. 3d 342, 355 (M.D. Pa. 2016) (quoting *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)). "[A] conclusion that the claimant's mental [or physical] impairments are non-severe at step two does not permit the ALJ [simply to] disregard those impairments when assessing a claimant's RFC and making conclusions at step[s] four and five." *Id.* at 355–56 (quoting *Wells*, 727 F.3d at 1068–69). Accordingly, "[t]he ALJ did err by reason of h[er] failure

8

to consider and explain h[er] reasons for discounting all of the pertinent evidence before h[er] in making his residual functional capacity determination." *Burnett*, 220 F.3d at 121. "In making a residual functional capacity determination, the ALJ must consider all evidence before h[er]." *Id.*

The Court thus disagrees with the Commissioner's suggestion that the ALJ's step two decision is an adequate substitute for her RFC analysis. The authority on which the Commissioner relies—20 C.F.R. § 404.1522(a)—does not support that proposition. Instead, § 404.1522(a) merely defines the term "non-severe impairment," which presents a different inquiry from whether an impairment limits a claimant's functional capacity.

Finally, the Court cannot otherwise deem the ALJ's decision harmless. The ALJ's lack of supporting analysis concerning Plaintiff's exertional limitations at step four militates "meaningful judicial review." *Burnett*, 220 F.3d at 119. "Although the ALJ may weigh the credibility of the evidence, [s]he must give some indication of the evidence which [s]he rejects and h[er] reason(s) for discounting such evidence." *Id.* at 121. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). While the ALJ gave some indication at step two of what she thought of Plaintiff's exertional limitations, she did not consider that evidence against the standards for the RFC determination and/or in combination with the limitations listed in Plaintiff's RFC.

The Court therefore vacates and remands the ALJ's decision. While remand makes it unnecessary to consider Plaintiff's other arguments, the Court will briefly outline those arguments for the ALJ's consideration on remand.

### B.     Other Arguments

#### i.     *Lack of Treatment Records*

Plaintiff argues that the ALJ violated internal policy by relying on his failure to pursue treatment for several years as evidence of a less limiting RFC. (Mov. Br. at 16). Social Security Ruling ("SSR") 16-3p states:

> In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis *without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints*. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3p, 2017 WL 5180304, at *9 (emphasis added). Plaintiff argues that he did not pursue treatment for several years because he was self-medicating with alcohol and did not fully acknowledge his PTSD and his need for treatment. (Mov. Br. at 16). The Commissioner does not clearly dispute that an ALJ should, in light of the above policy, consider the possible reasons that a claimant does not pursue treatment. (Opp. Br. at 13–15). Instead, the Commissioner appears to suggest that any error would be harmless because Plaintiff did not identify any barrier to him pursuing treatment and because his longitudinal treatment history did not support a more limited RFC. (*Id.*).

In light of the remand, the Court does not decide whether the failure to explicitly follow SSR 16-3p was harmless.[1] On remand, the ALJ should consider, as SSR 16-3p directs, the possible

---

[1]   That said, the Court would not be inclined to find any error harmless. Contrary to the Commissioner's suggestion, the Plaintiff identified barriers (his alcohol abuse and PTSD) to him pursuing treatment. (Mov. Br. at 16).

10

reasons that Plaintiff did not comply with treatment or otherwise seek treatment consistent with the degree of his complaints.

### ii.     *Opinion Evidence*

Plaintiff argues that the ALJ did not appropriately consider opinion evidence related to Dr. Cuesta, Plaintiff's treating physician, and Dr. Alexander Hoffman, M.D., the consultative examiner who saw Plaintiff in February 2019. (Mov. Br. at 17–19).

First, Plaintiff argues that the ALJ failed to include in his RFC that he was limited in concentration, persistence, and pace, and required time-off tasks. (*Id.* at 17). That is so, Plaintiff says, despite the ALJ crediting Dr. Cuesta's opinion regarding those limitations. (*Id.*). The Commissioner responds that these limitations are not relevant because the ALJ limited Plaintiff to simple work, which necessarily includes those limitations and does not require more than a moderate limitation in concentration, persistence, and pace. (Opp. Br. at 18). However, the authority on which the Commissioner relies does not appear to support that proposition. The Commissioner cites SSR 96-9P, which says "[a] less than substantial loss of ability to perform any of the above basic work activities *may or may not* significantly erode the unskilled sedentary occupational base." SSR 96-9P, 1996 WL 374185, at *9 (emphasis added). Moreover, the Commissioner cites 20 C.F.R. § 404.1568(a), which defines the term "unskilled work" but without reference to a moderate limitation in concentration, persistence, and pace, or to a limitation of having time-off tasks. On remand, the ALJ should consider the parties' dueling arguments and

---

The Commissioner also suggests that any error would be harmless because the longitudinal treatment record, as discussed by the ALJ, did not support a more limiting RFC. (Opp. Br. at 15). But several times, the ALJ relied on Plaintiff's lack of treatment records to support her view regarding the longitudinal treatment record. (R. at 114–15). And not only would the ALJ's view be tainted by her failure to consider why the longitudinal treatment record was not more developed; it appears that some of the ALJ's reasoning was logically inconsistent. For example, the ALJ found Plaintiff's non-exertional limitations less limiting in part because he had worked as an Uber driver. (*Id.*). But at the same time, the ALJ found that Plaintiff did not have the RFC to perform work that required contact with the public. (*Id.* at 113).

11

the extent to which simple work includes some of Plaintiff's non-exertional limitations that were not included in the RFC.

Second, Plaintiff argues that the ALJ did not appropriately explain the basis for rejecting Dr. Cuesta's opinion regarding Plaintiff's need for unscheduled breaks or multiple absences. (Mov. Br. at 17–18). The ALJ inappropriately, says Plaintiff, relied on the lack of treatment notes supporting that opinion. (*Id.*). Further, Plaintiff argues that, if the ALJ saw a gap in the record, she should have recontacted Dr. Cuesta for an explanation. (*Id.* at 18). The Commissioner responds that the ALJ's consideration regarding the lack of supporting documentation is precisely the type of analysis called for by the social security regulations. (Opp. Br. at 18). The Commissioner also argues the ALJ had discretion to decide whether to recontact Dr. Cuesta and did not abuse her discretion in declining to do so because the record was sufficiently developed. (*Id.*). The Commissioner appears to have the stronger of the argument here—20 C.F.R. § 404.1520b(b)(2) suggests that it is up the ALJ's discretion to recontact a medical source. That section says, "[i]f the evidence in your case record is insufficient or inconsistent, we *may* need to take the additional actions," which includes recontacting a medical source. 20 C.F.R. § 404.1520b(b)(2). It does not appear to impose a binding obligation on the ALJ to add to a relatively robust record. That said, the ALJ's reliance on the lack of supporting treatment evidence raises a concern in light of the ALJ's failure, as discussed above, to consider the possible reasons that treatment evidence might be missing, as directed by SSR 16-3p. On remand, the ALJ may exercise her discretion in deciding whether to recontact Dr. Cuesta.

Third, and similarly, Plaintiff argues that the ALJ should have recontacted Dr. Alexander Hoffman, M.D., the consultative examiner who saw Plaintiff in February 2019, to obtain a medical source statement or another consultative exam. (Mov. Br. at 18–19). By failing to do so, according

12

to Plaintiff, the ALJ discussed a medical source of little or no practical value. (*Id.* at 19). The Commissioner responds that a medical source statement from Dr. Hoffman was not necessary or required by the social security regulations, and that Dr. Hoffman's consultative report was relevant and contributed to the evidence in Plaintiff's case file. (Opp. Br. at 20). Again, the ALJ may, on remand, decide whether to recontact Dr. Hoffman.

## V.   CONCLUSION

For the foregoing reasons, the Court **VACATES** and **REMANDS** the decision of the Commissioner. An appropriate Order will follow.

Dated: June 30, 2022

Hon. Esther Salas, U.S.D.J.